```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                            13 Cr. 368 (DLC)

MAXIM CHUKHAREV,

               Defendant.

------------------------------x

                                        January 30, 2015
                                        10:15 a.m.

Before:

                    HON. DENISE L. COTE

                                        District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  CHRISTINE MAGDO
     ANDREW GOLDSTEIN
     KEVIN MOSLEY
     Assistant United States Attorneys

SARAH KUNSTLER
SUSAN KELLMAN
     Attorneys for Defendant

ALSO PRESENT:  TATE JARROW, Secret Service
               JEREMIAH HAYNIE, Interal Revenue Service
               DAGOBERTO ORRANTIA, Spanish Interpreter
```

1             (Case called)

2             (In open court)

3             MS. MAGDO:  Christine Magdo, assistant United States

4    attorney on behalf of the government.  With me at counsel table

5    is Andrew Goldstein, assistant United States attorney for the

6    Southern District of New York, Kevin Mosley, special assistant

7    U.S. attorney from the Department of Justice, Secret Service

8    agent Tate Jarrow and IRS special agent Jeremiah Haynie.  Good

9    morning.

10            THE COURT:  Thank you.

11            MS. KUNSTLER:  Your Honor, good morning.  Sarah

12   Kunstler for Maxim Chukharev.  And with me at counsel table is

13   Susan Kellman who was also appointed on the case.  Thank you.

14            THE COURT:  Welcome, everyone.

15            MS. KELLMAN:  Good morning, Judge.

16            THE COURT:  I want to observe that we have an

17   interpreter present in the courtroom who is certified to

18   interpret between Spanish and English.  And my understanding is

19   that Mr. Chukharev does not wish the services of the

20   interpreter during this proceeding but would appreciate having

21   the interpreter present on a stand-by basis in case there is a

22   word or a phrase or a passage in these proceedings for which he

23   would like the interpreter's assistance.  Have I correctly

24   stated the understanding, Ms. Kunstler?

25            MS. KUNSTLER:  Yes, that's correct, your Honor.

1            THE COURT:  Thank you.  Ms. Kunstler, have both you
2    and your client read the presentence report?
3            MS. KUNSTLER:  Yes, we have, your Honor.
4            THE COURT:  Now, did the defendant require that report
5    to be translated to him, or did he read it in English?
6            MS. KUNSTLER:  Your Honor, I had a Spanish interpreter
7    available, but he did not require it translated into Spanish.
8            THE COURT:  Thank you.  And I take it you discussed
9    the report with each other after reading it?
10           MS. KUNSTLER:  Yes, we did.
11           THE COURT:  And do you have any objections to the
12   report other than what might be contained in your written
13   sentencing submissions to me?
14           MS. KUNSTLER:  No, your Honor.
15           THE COURT:  Thank you.  The presentence report will be
16   made part of the record in this case and placed under seal.  If
17   an appeal is taken, counsel on appeal may have access to the
18   sealed report without further application to this court.
19           I have received sentencing submissions.  I have the
20   government's sentencing submission of January 23, which was
21   filed on ECF.  I have the defendant's sentencing submission of
22   January 16, which was filed in redacted form, as I understand
23   it, along with an appendix of exhibits which are letters, and I
24   have read all of that material.
25           This is a case in which there was a guidelines

1  stipulation, a plea agreement between the government and
2  defendant, with the calculation based on an offense level of 29
3  and a Criminal History Category of I.  That led to a guidelines
4  range of 87 to 108 months in prison.  However, the plea which
5  the defendant entered carries with it a maximum term of
6  imprisonment of five years or 60 months and, therefore, the
7  maximum sentence that could be imposed today is 60 months even
8  though the guidelines range is higher.  I adopt the PSR's
9  determination on the guidelines range, and it is as I have just
10 described, so it is consistent with the parties' plea
11 agreement.

12          The probation department recommends a sentence of 36
13 months.  There is a request by the defendant here for a
14 nonguideline sentence, that is, a sentence below 60 months, as
15 requested in their sentencing submission and, I am sure, as I
16 will hear orally in a moment.  Among the arguments made by the
17 defendant for a sentence below 60 months is a comparison with a
18 co-defendant who received a 60 month sentence and whose conduct
19 was far more integral to the operation of the enterprise than
20 this defendant's.

21          As I understand it, the defendant was arrested in
22 Costa Rica on May 24, 2013 and extradited to this country on
23 March 27, 2014.  The conditions of imprisonment in Costa Rica
24 were horrendous and are described in the sentencing submissions
25 to me, principally due to overcrowding and everything that

1  flowed from that.
2       As I understand it, the government is not going to
3  seek an order of restitution or forfeiture.
4       MS. MAGDO:  That's correct, your Honor.
5       THE COURT:  So, you don't need to turn to those
6  issues.
7       Mr. Chukharev pled guilty to essentially understanding
8  that the business Liberty Reserve was required to have a
9  license for its operations and did not.  I reviewed the plea
10 allocution, so I'm just summarizing it.
11      The government's sentencing letter indicates that it
12 is not contesting Mr. Chukharev's contention that he had no
13 contemporaneous knowledge of the purpose of the Liberty Reserve
14 companies with which he was working, or knowledge or control
15 over these accounts.  It is undisputed that the Liberty
16 Reserve's operation was conducted in a way that assisted people
17 engaged in fraud.  It is also, as I understand it, undisputed
18 that Mr. Chukharev was very involved with the efforts to
19 deceive the Costa Rican authorities who were involved with
20 making sure that the Liberty Reserve operations were not
21 engaged in money laundering or other activities that fell under
22 the jurisdiction of the Costa Rican agency.  The regulatory
23 agency is known by the acronym SUGEF.
24      So, that's a sort of description of the background, as
25 I understand it.  I state it so that if I have anything wrong

1    there, I'm going to count on the parties to make sure that they
2    correct my understanding and impression.
3           I think the issue of comparison with the
4    co-defendant's sentence is a particularly interesting one in
5    this case.  Both sentences -- the one I imposed before and
6    today's sentence -- are being imposed within the constraint of
7    a maximum term of imprisonment that falls far below the
8    sentencing guidelines range.  So, while generally it's very
9    important to think about sentences given to other defendants
10   who should be properly compared to the defendant, this
11   statutory cap adds a layer of complexity to that analysis.
12   But, nonetheless, I consider it an important part of what I
13   must focus on today.
14          Also, Mr. Chukharev's presentation about his
15   background and the way he has lived his life up until the time
16   his technical skills brought him into contact with the people
17   at Liberty Reserve, or prompted them to offer him a job because
18   of those technical skills, is something I focused on carefully
19   as well.
20          With that background, I will hear from the government.
21   Ms. Magdo.
22          MS. MAGDO:  Thank you, your Honor.  Your Honor has
23   obviously read our papers very closely and has accurately
24   summarized the government's position.  Unless the court has
25   particular questions for the government, we would rest on our

1  submission of last week.

2       THE COURT:  Thank you, Ms. Magdo.

3       Ms. Kunstler?  By the way, before you speak, I want to
4  thank both you and Ms. Kellman for your cooperation in
5  representing the defendant here, and in particular,
6  Ms. Kunstler, for your wisdom in selecting Ms. Kellman as an
7  assistant in this case and a sounding board for a strategy.  I
8  know the principal responsibility in representing the defendant
9  has fallen on your shoulders, but I appreciate Ms. Kellman
10 making the commitment to be involved as well.  Thank you.

11      Ms. Kunstler.

12      MS. KUNSTLER:  Thank you, your Honor.  I also very
13 much appreciate Ms. Kellman making herself available on this
14 case.

15      Your Honor, Maxim Chukharev is not the typical federal
16 defendant.  I think the court knows this from reading our
17 papers.  Born in Uzbekistan in the former Soviet Union, Mr.
18 Chukharev's parents risked everything and lost everything in
19 order to flee the persecution they experienced at home and in
20 particular the brutality that their sons faced on a day-to-day
21 basis.  They brought their children to Costa Rica where they
22 had to start over.  Mr. Chukharev was raised in impoverished
23 circumstances, but above all he was taught the importance of
24 family and the value of hard work.  He worked hard all of his
25 life, all of his young life, from age 16 onward, to help his

1    parents and to show them that he understood the value of the
2    sacrifice they made for him.  And that really is one of the
3    real tragedies here and one that Mr. Chukharev painfully and
4    candidly acknowledges in his letter to the court.  He says I
5    lost sight of what is important and turned my back on how I was
6    raised.  And getting to know Mr. Chukharev over the ten months
7    that I have gotten to know him, I have seen this pain and this
8    shame firsthand in my dealings with him.
9               This is also not the typical federal criminal case.
10   What I mean by that is that Mr. Chukharev's involvement is not
11   typical.  When he took a job at Liberty Reserve he believed it
12   to be a legitimate company; he thought he found a career, a
13   company that he could help build, something he could be proud
14   of.  And that was one of the things that we talked about, him
15   saying to me this is something I wanted to point to my
16   children, that I helped build that.
17              Once was there, he learned that the company was not
18   what it seemed to be.  They were building a hidden
19   administrative area to hide information from SUGEF.  They were
20   doing business in the U.S., and they failed to register to do
21   business there.  And Mr. Chukharev learned these things, and he
22   continued to work there, and he continued to help Liberty
23   Reserve do its business.  And by doing this, Mr. Chukharev was
24   making a choice, and he knows that, and he knew that the choice
25   he was making was to help Liberty Reserve commit a serious

1    crime against the United States.

2           The government recognizes that Mr. Chukharev's role
3    relative to that of his codefendants was minor.  He wasn't an
4    owner.  He didn't profit beyond his regular salary, which was
5    in line with Costa Rican mandated wage scales and industry
6    standards, and relatively low compared to what these salaries
7    are in the United States.  And he didn't have the same level of
8    knowledge as his coconspirators in this case.  What the court
9    correctly focuses on is that comparison, the comparison between
10   him and his codefendants, their roles and the statutory cap
11   here.

12          Further, Mr. Chukharev's entire life flies in the face
13   of his conduct in this case.  He is a committed son and father.
14   He is a good friend.  He is a person who cares for the people
15   around him, and a person who feels a personal responsibility
16   not only to take care of his own family but to be of service,
17   whether it be teaching senior citizens computer skills in his
18   community, or encouraging his friends to be their best selves,
19   or helping GED students, Spanish-speaking GED students in the
20   jail, which he has here, and whom your Honor has letters from.

21          The past 20 months have been very difficult for Mr.
22   Chukharev.  As the court knows, the first half of his sentence
23   was spent in a living hell in a Costa Rican jail where people,
24   you had no room to move.  I submitted two photographs that were
25   taken at the jail to give the court a sense of really how

1   densely packed it was.  During his time there, Mr. Chukharev
2   lost a tremendous amount of weight.  When he came to this
3   country, he was in poor health, he was weak.  He has here built
4   himself back up, but when I met him he was a very lethargic
5   person and a person deeply traumatized by the ordeal he had
6   undergone.
7            The conditions of Mr. Chukharev's confinement here in
8   the United States are considerably better, but what he doesn't
9   have here -- which he had there -- is his family.  He spent
10  these past ten months totally isolated from his family.  He
11  does have sitting in the audience here today Michael Simmons,
12  who is in the blue shirt in the second row, who is here with
13  his mother, whom he didn't know before his incarceration, but
14  who is a family friend, and who has of his own accord begun
15  visiting Maxim and spending time with him, and who in his
16  post-arrest context -- and who also has no experience with
17  people committing crimes, and was almost kind of wary about
18  getting to know Max under these circumstances, but who has been
19  impressed with the person he met, and who has also written a
20  letter to this court about his impression of Mr. Chukharev.
21           Your Honor, I stated this in my papers, but the 20
22  month sentence that Mr. Chukharev has already served is
23  essentially a 26 month sentence with credit for good time.
24  Given the history and characteristics of this defendant, and
25  the nature and circumstances of his criminal conduct, a

1    sentence of 26 months is sufficient but not greater to meet the

2    goals of sentencing -- sufficient but not greater than

3    necessary, your Honor, to meet the goals of sentencing.  Thank

4    you.

5                THE COURT:  Thank you, Ms. Kunstler.

6                Mr. Chukharev, is there anything you would like to say

7    to me on your behalf in connection with this sentence?

8                THE DEFENDANT:  Yes, your Honor.  I'm a little

9    nervous.  I'm sorry.

10               First of all, I wanted to thank you for reading

11   everything that my attorney has presented, for giving me a

12   chance to express myself.  At the same time, I now personally

13   would like to apologize to this court, to the government of the

14   United States, and to my family.  I want to say how sorry I am

15   for my criminal acts.  There are no words to describe the

16   feeling of shame I am experiencing right at this moment.

17               I accept full responsibility for my actions, and I

18   will never do anything like this again.  At the same time, I

19   wrote something because I don't think I can do it by memory.

20   This is from my own words.  So you can judge me as a person the

21   way I am.

22               Your Honor, before my arrest I was researching carbon

23   free energy.

24               THE COURT:  OK.  Now, Mr. Chukharev, I'm going to ask

25   you, it's fine with me for you to read something, but I'm going

1   to ask you to go slowly.  Read it slowly.

2              THE DEFENDANT:  Yes.

3              THE COURT:  And keep your voice up.

4              THE DEFENDANT:  Yes.

5              THE COURT:  Thank you.

6              THE DEFENDANT:  Your Honor, before my arrest I was
7   researching on carbon free energy or the ecologic source of
8   energy.  Occasionally my father and my fiancee would help me
9   out to craft parts for the experiments in my projects.  During
10  the last almost two years of my imprisonment, I had an
11  opportunity to read a lot of books.  Some of them were science
12  books like math or physics, basic physics.  And I came up with
13  new ideas for my research.  Once I get back home, one of the
14  things I will immediately start working on will be the
15  development of these ideas.  Perhaps one day I will also bring
16  something constructive into this world, into our society.  In
17  the meanwhile, my plan is to show respect for the law and for
18  my family.  I have to start from the ground.  I have a lot to
19  catch up with, and I'm totally committed to that path forward.
20  Thank you, your Honor.

21             THE COURT:  Thank you, Mr. Chukharev.

22             THE DEFENDANT:  Finally, I would like to thank my
23  lawyer -- I think she is the best lawyer in the world -- and
24  Ms. Kellman, and my friend Michael and his mother.  Thank you.

25             THE COURT:  So, this is a sentence in which you weigh

1   a lot of things on one side and then very serious criminal
2   conduct on the other.
3         On one side Mr. Chukharev was not living his life in a
4   way that was destined to involve him in criminal activity.  He
5   went to school not as long as he would have liked because he
6   also worked hard to support his family, but he was a very
7   responsible member of his family, a good friend, someone who
8   worked hard in legitimate business, was furthering himself in
9   his career.  And it's his technical skills that brought him
10  into contact with the Liberty Reserve folks, not because he was
11  searching out ways to commit crime.
12        So, I have a record that suggests to me that this
13  experience has been indeed sobering to Mr. Chukharev, and every
14  expectation that he will not make the judgments in the future
15  that he made in the past.  Once he got involved in Liberty
16  Reserve, he understood that his skills were going to be put to
17  use and were being put to use to help a criminal enterprise
18  break the laws of the United States and deceive the government
19  authorities in Costa Rica, and Mr. Chukharev chose not to walk
20  away; he chose to continue.  And because of his skills and the
21  importance to the way Liberty Reserve was managed, his
22  resources were of significant help to them.  His job was an
23  important one, and as a result I'm fashioning a sentence
24  focused on the defendant as an individual but also
25  understanding the importance of the criminal activity in which

1     he engaged, and the need to make a statement that involvement
2     of that kind is going to be punished.
3             Mr. Chukharev, please stand.  I'm going to impose a
4     term of imprisonment of 36 months, to be followed by no term of
5     supervised release.  I do not find that supervised release is
6     necessary here.  I expect the defendant to be sent back to
7     Costa Rica where he intends to live his life.
8             I will add as a portion of his sentence the
9     requirement that he submit to deportation and not unlawfully
10    reenter this country.
11            I impose a special assessment of $100.
12            I decline to impose a fine, being familiar with the
13    financial circumstances of Mr. Chukharev and his family and his
14    obligations once he returns home.
15            Counsel, is there any legal reason I cannot impose the
16    sentence that I have just described as stated?  Mr. Magdo?
17            MS. MAGDO:  No, your Honor.
18            THE COURT:  Ms. Kunstler?
19            MS. KUNSTLER:  No, your Honor.
20            THE COURT:  I order the sentence I have described to
21    be imposed as stated.
22            Now, Mr. Chukharev, I need to advise you of your right
23    to appeal.  I'm unaware of any ground for an appeal.  You have
24    largely given up your right to appeal by your plea of guilty
25    and the guidelines stipulation, and I sentenced you to a

1  sentence below your waiver of appeal rights in the guidelines
2  stipulation.  Nonetheless, I am required by law to advise you
3  of the following:  If you are unable to pay for the cost of an
4  appeal, you may apply for leave to appeal in forma pauperis.
5  Any notice of appeal must be filed within 14 days of the
6  judgment of conviction.  You may be seated.
7       I believe there are open counts?
8       MS. MAGDO:  Yes, your Honor.  At this point the
9  government moves to dismiss any remaining open counts.
10      THE COURT:  Any open counts against the defendant?
11      MS. MAGDO:  Mr. Chukharev, he is charged in two
12 indictments, so it would be the open counts, namely Counts One
13 and Three against him in both indictments.
14      THE COURT:  Yes.  Any open counts in this or the
15 underlying indictment against Mr. Chukharev are dismissed.
16      Anything else we need to do?
17      MS. MAGDO:  Not from the government.  Thank you, your
18 Honor.
19      MS. KUNSTLER:  Nothing from the defense.  Thank you.
20      * * *
21
22
23
24
25